(No. 3663— ▉▉▉▉▉▉▉

JAMES FLETCHER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 8, 1942.*

ABRAMS & ABRAMS, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

Eckert, J.

The claimant, James Fletcher, was first employed by the Department of Public Works and Buildings, Division of Waterways, on May 27, 1941. On June 28, 1941, he was acting as a bridge tender on the McDonough Street bridge at Joliet, Illinois, at a salary of $150.00 per month. His duties were to open the bridge for the passage of boats and to close it for traffic on highways and streets. The movement of the bridge is controlled by means of a pinion gear rolling along a gear track. It was a duty of the claimant to keep this gear track and pinion gear clean and free from all foreign substances for the proper operation of the bridge.

About nine-thirty o'clock on the evening of June 28th, claimant raised the bridge to permit the passage of a tug boat, and while the bridge was in a raised position, observed a dog caught on the east lift span immediately above the gear track. Fearing that the animal might fall on the gear track and damage the machinery, claimant tried to extricate it, and, in attempting to do so, slipped on the gear track and fell on to the highway below, a distance of about twenty-five feet, landing on his back and side.

Under the direction of L. C. Mork, Chief Bridge Tender, claimant was removed by ambulance to St. Joseph's Hospital in Joliet, Illinois, where he was attended by Dr. Frank H. Hedges, Jr. It was found that claimant had sustained a fracture of the lumbar vertebrae. The fracture was reduced by means of a plaster cast, and claimant remained in the hospital until August 1, 1941, when he was removed to his home. On the order of Dr. Hedges, claimant purchased at the cost of $26.00 a special spring and mattress to keep his bed rigid.

The plaster cast was removed September 27, 1941, and thereafter hot applications were prescribed with a liniment rub for ten minutes each day. These applications continued until November 18, 1941.

On December 8th, 1941, claimant returned to his former employment. He has been paid compensation for temporary total disability in the sum of $140.32. Respondent also paid Dr. Hedges for his services the sum of $202.00 and St. Joseph's Hospital at Joliet, the sum of $144.88.

Claimant testified that although he has returned to his employment, he is unable to operate the bridge, is unable to raise and lower the windows of the bridge house, and is unable to lift heavy objects. He still suffers sharp pains in his back whenever he sits or stands for any length of time.

When the injury occurred, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. From the record it appears that the accident arose out of and in the course of employment. Claimant's earnings at the time of the accident were $150.00 per month; his average annual earnings were $1,800.00, and his average weekly wage was $34.62. He had no children under sixteen years of age. Claimant was temporarily totally incapacitated from the date of the accident until he returned to work on December 8, 1941, or a period of 23 2/7 weeks. Claimant is therefore entitled to $16.50 per week for 23 2/7 weeks, or the sum of $384.21, from which must be deducted $140.32 heretofore paid to claimant, leaving a balance of $243.89. Claimant is also entitled to be reimbursed in the sum of $26.00 for the spring and mattress which he purchased to facilitate the healing process.

Claimant, however, is not entitled to any compensation for permanent disability. From the testimony of Dr. Frank E. Deadman, on behalf of claimant, and of Dr. Frank H. Hedges, Jr., on behalf of the respondent, it is clear that claimant sustained a very serious injury to his back. The doctors do not agree as to its extent or permanency, but it is unnecessary for us to discuss this medical testimony in detail. Section 8, Sub-section (d) of the Workmen's Compensation Act provides:

"If, after the injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line

of employment, he shall, except in the cases covered by the specific schedule set forth in paragraph (e) of this section, receive compensation, subject to the limitations as to time and maximum amounts fixed in paragraphs (b) and (h) of this section, equal to fifty per centum of the difference between the average amount which he earned before the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident."

This is the only section of the Act applicable here, and the testimony shows that the claimant is in fact earning the same money now which he earned prior to the accident. There is no proof of any such difference in earning capacity as is required by the Statute.

Award is therefore entered in favor of the claimant for the sum of $269.89, all of which is accrued and is payable forthwith.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for in such Act.